NEW-YORK SPECIAL TERM, January, 1850.  *Edmonds*, Justice.

## MORGAN *vs.* AVERY.

Where an attachment has been issued against a person as an absconding debtor, the proper method of obtaining redress for any irregularity or impropriety in issuing it, is by a special motion to the court, and not by appeal.

On a motion to set aside an attachment, affidavits on the part of the plaintiff may be received, not merely in answer to those on the part of the defendant, but in support of the original application for the attachment.

Under the code of procedure the sufficiency of the affidavits on which an attachment is issued is no longer a jurisdictional question.  And *it seems* that the whole proceeding, the warrant and the affidavits, are amendable in furtherance of justice, and unimportant errors or defects therein may be disregarded.

In order to obtain an attachment under the code, the grounds of the application may be made to appear by the affidavit of the plaintiff himself, as well as of any other person, and may be shown upon information and belief, whenever that may be presented to the judge in such form, that he can act judicially upon it.

Where it is conceded that the defendant has departed the state, all that is required is for the court to be satisfied that his departure was with intent to avoid the service of process.  It is not necessary to determine whether he went away with intent to defraud his creditors.

From what circumstances an intention on the part of the defendant to avoid the service of process may be inferred.

THIS was a motion to set aside two attachments which had been issued against the defendant on affidavits alledging that he was indebted to the plaintiff and had departed from the state with intent to defraud his creditors.  It appeared that the defendant was a wholesale grocer in the city of New-York, doing business to the amount of about $300,000 a year.  About four years ago he had failed in business, and had compromised with

Morgan *v.* Avery.

his creditors, and among others with the plaintiffs, who had given him a letter of license which ran out in August, 1849. At that time he was unable to pay the debt which had thus been extended, but borrowed from the plaintiff Morgan $4000, secured by a hypothecation of sundry collaterals. In October, 1849, he purchased an interest in an English patent right, and on the 4th December he took passage in the steamer which was to sail for Liverpool on the 12th of that month. He sailed accordingly on that day, taking with him £500 only, and leaving his store with the goods which it contained, with his chief clerk, to whom he gave a power of attorney to transact his business in his absence. The next day after he sailed, his clerk called a meeting of his creditors, but before it was held these attachments were issued. In answer to inquiries at his store, his clerk said he had gone east, that they did not know where he had gone, nor when he would return, &c. On the part of the defendant it was averred that he had not departed secretly; having made known his intention to go, to his family, to his clerk, and to those engaged with him in the patent right. On the other hand it appeared that he was owing, at the time of his departure, some $20,000, a portion of which was past due; that his credit had been much impaired; that he attempted to borrow money the day before he left; that he had borrowed money by means of storage receipts on most of the goods in his store, and had not disclosed to any of his creditors his intention to go abroad; but in conversations had with some of them, within a day or two of his sailing, conveyed the idea of his intention to remain at home as usual.

*W. M. Evarts,* for the defendant.

*D. Lord,* for the plaintiff.

EDMONDS, J.   The first objection which is to be considered on this motion is that made on the part of the plaintiff, that the defendant can not have redress on a special motion, but only by appeal. The only mode in which an appeal could be available

would be by regarding the attachment as an order, and requiring it to be entered with the clerk pursuant to § 350 of the code. This view is sanctioned by § 349, which allows an appeal from an order made by a single judge when it grants or refuses a provisional remedy.

The provisional remedies provided by the code are four; arrest and bail, claim and delivery of personal property, injunction, and attachment. All these remedies may be obtained ex parte, upon partial statements of one side only and without any opportunity in the first instance for the other party to protect himself against their injurious operation. To guard against these injuries, and to prevent remedies intended to be merely provisional from having the effect and operation of final ones, the code contains several enactments.

Thus on an arrest, the party may be discharged from custody by giving bail, or he may apply, on motion, to vacate the order of arrest or reduce the amount of bail. (§§ 186, 204, *of Code.*) So on a claim and delivery of personal property, the defendant may have the property redelivered to him on giving security. (§ 211.) On injunction, the defendant may apply by special motion to vacate or modify it. (§ 225.) And on an attachment, the defendant may have it discharged, or the property restored to him, on giving security. (§§ 240, 241.)

Thus it will be seen, that in the case of two of the provisional remedies, namely, arrest and injunction, it is provided that redress may be obtained on a special motion; but no such redress is expressly provided in the code in cases of attachment, and claim of personal property; and the question occurs whether it is available.

The arrest and injunction are by order, and not by process; and in respect to them, it might be argued that there is a remedy by appeal. But the claim and delivery of property, and the attachment, are not by order. The former is by a requisition of the party, indorsed on the affidavits, and the latter is by "warrant." So that in respect to them there can be no remedy by appeal; and unless a special motion be available, there is no

redress against any irregularity or impropriety in using these two of the provisional remedies.

So far as the attachment is concerned it is process, and over its process the court has necessarily a control, lest it be abused or perverted to purposes of oppression. That control is exercised according to the course and practice of the court, by special motion. It required no provision of the code to confer this power and mode of redress. They are inherent in the court, and unless taken away by statute, must of necessity be resorted to, and rendered available. (*Lenox* v. *Howland,* 3 *Caines,* 257. *McQueen* v. *Middletown Man. Co.* 16 *John.* 5.)

The next objection, somewhat preliminary in its character, is that made on the part of the defendant, that the attachment must stand or fall by the original affidavits on which it was obtained, and that the plaintiff's case as then made out, can not be bolstered up by affidavits subsequently obtained, and produced in court. I can find no warrant for this objection, in the statute, and of course nothing to take such a case out of the rule governing all special motions, which permits papers to be read on both sides.

The only kindred practice to that claimed here is, that on a motion to vacate an order to hold to bail, where it has been held that supplementary affidavits will not be received to cure a defect in the original affidavit. That rule grew out of the peculiar practice of the king's bench, which required the affidavit in all cases to be made in the first instance, which only allowed the defendant to move for a discharge on the ground of its insufficiency, and which would not receive counter affidavits to contradict or do away with the effect of the affidavit to hold to bail. The distinction between the two cases is very marked, and particularly so when we advert to the fact that an attachment may issue at any time in the progress of a suit; (§ 227,) so that if the first attachment should be set aside by reason of defective affidavits, a new warrant might immediately issue on new affidavits, which could never be the case in the old practice of arrest on original process. And when it is further considered that that old practice on an arrest is expressly abrogated by the

code, (§ 205,) it would be too much to restore it as applicable to attachments.

I therefore consider it good practice to overrule this objection and receive affidavits on the part of the plaintiff, not merely in answer to those on the part of the defendant, but in support of the original application for the attachment. If such application was originally defective, that may influence the question of costs, but need not affect the great question whether by reason of the defendant's absconding, the plaintiffs are entitled to the provisional remedy of an attachment. ( *Vide Lenox* v. *Howland,* 3 *Caines,* 323.)

I ought not, perhaps, to pass from this topic without noticing the cases to which I was referred, in which it was held that an attachment against an absent or absconding debtor under the revised statutes should be set aside if the original affidavits were defective. (18 *Wend.* 611. 4 *Hill,* 598. 7 *Id.* 187.) In those cases, the affidavits were necessary to confer jurisdiction. The proceeding was not in court, but a special one before an officer out of court, whose whole authority was derived from the statute, and could not be enlarged or conferred by implication, and like all cognate cases, could not be amended, but must fail if the foundation on which jurisdiction rested should fail. It is now, however, far otherwise with an attachment. It is now process in a suit, before a court having competent jurisdiction of the subject matter thereof. It is not even original process ; for no suit can be commenced by it ; and like all other process, must be issued by the clerk in the usual form of writs, though upon an allowance by a judge. The sufficiency of the affidavits on which it may issue, is no longer a jurisdictional question ; and it would seem as if the whole proceeding, the warrant and the affidavits, were amendable in furtherance of justice. ( *Code,* § 173.) And any error or defect in them which shall not affect substantial right, shall be disregarded by the court in every stage of the action. (§ 176.)

The remedy by this writ is in a measure, novel in our jurisprudence. It never has been until now process in the progress of a suit in the higher courts, and its value to creditors as a

mode of enforcing payment, as well as its importance to debtors whose whole property, legal and equitable, may thus be sequestered in the very commencement of a litigation, alike demand that its character should be well understood, and its operation be so guided as to effect the great ends which the statute has in view. Regarding it as process only, not jurisdictional in its character, but as provisional, in the progress of a suit, it will always be within the control of the court, who can mould it to useful purposes, and render it innoxious.

Another consideration was presented to me, which it may not be necessary to determine on this motion, but which it may nevertheless be well to pause a moment to consider.

The statute provides, (§ 229,) that "the attachment may be issued whenever it shall appear by affidavit," &c.; and it is now objected that this means proof, legal proof, not the oath of the party, nor information and belief of any one. It has been so held under the revised statutes, but that arose from the peculiar language of that enactment, which spoke of "proof to the satisfaction of the officer," and of the facts and circumstances to establish the grounds of the application being verified by the affidavits of two disinterested witnesses. (2 *R. S.* 3, §§ 5, 6.)

The revised laws of 1813, (1 *R. L.* 157,) required that the concealment or departure should be proved to the satisfaction of the judge by two witnesses. Under that statute it was held, *in re Fitch* (2 *Wend.* 298,) that an affidavit of the witnesses that they believed that the debtor was a non-resident, was sufficient. And in *Ex parte Haynes*, (18 *Wend.* 614,) the court say they should not hesitate, under that statute, in receiving the oath of mere belief; and more was required in the case then under consideration, because of the altered language of the statute. In *Smith* v. *Luce*, (14 *Wend.* 237,) the court put a similar construction on similar words in the act of 1831, to abolish imprisonment for debt. But in the case in 18 Wendell the court intimate that information and belief, under proper circumstances, might satisfy even the stringent language of the revised statutes. In 14 Wendell they held that if the affidavit had stated positively

that the party had absconded, or the like, it would be proof on which the officer could act judicially.

Such was the language of our statutes, and such the construction put upon them before the code was enacted. That body of laws, avoiding the strict language before that time used, allows the attachment to issue whenever it shall appear by affidavit, &c. and not requiring, as in the former statutes, that it shall be proved that the affidavits be by disinterested witnesses, nor that they state the facts and circumstances on which the application is founded.

There is a reason for this marked difference of language from that formerly used; because as to all the provisional remedies, it is evidently the intention of the code that they may be obtained merely on the affidavit of the party. Thus the order to arrest may be granted on the affidavit of the plaintiff, or any other person, (§ 181;) a delivery of personal property may be claimed on an affidavit by the plaintiff, or some one on his behalf, (§ 207;) an injunction may be granted on an affidavit of the plaintiff or any other person, (§ 220;) and an attachment may be issued whenever it shall appear by affidavit, &c. (§ 229.)

It seems to me, then, that in order to obtain an attachment, the grounds of the application may appear by the affidavit of the plaintiff himself, as well as of any other person, and upon information and belief whenever that may be presented to the judge in such form that he can act judicially upon it.

I turn now to the main question in the case, namely, whether the defendant has departed from the state with intent to defraud his creditors, or to avoid the service of a summons.

It will be observed that it is not necessary to determine that he has gone away with intent to defraud creditors; it is enough if it was with an intent to avoid the service of a summons. In one respect this statute is different from the revised statutes. Under the latter it was necessary that the debtor should have *secretly* departed. But now such secrecy is not required. If he has departed ever so openly, it will be enough, if the required intent is made out.

The defendant in this case, having confessedly departed the

state, all that is required is for the court to be satisfied that his departure was with intent to avoid the service of process. So that if the defendant was on the verge of bankruptcy, and left the state, though openly and publicly, and with a view of transacting business abroad, with a view of having the explosion take place in his absence, and of avoiding the importunity and the proceedings of his creditors, it would seem that the case would come within the statute. It is established in the papers that his departure was not secret, and that he went to Europe on legitimate business, avowing an intention to return in some six weeks. He may not have had an intention to defraud his creditors, and therefore have left all his property behind him except the £500, which was required for his foreign adventure. Still he may have designed to avoid the service of a summons on behalf of his creditors; and if he had such an intention, the attachment can be sustained. I am inclined to think that such intention is justly inferable from his embarrassed position; from his impaired credit; from his attempts to borrow money, so immediately on the eve of his departure; from his confessions of his inability to meet his payments as they became due; from his leaving behind him unpaid debts that were past due; from the pains he seems to have taken not to disclose to any of his creditors his intention to go abroad, though he saw some of them within a day or two of his departure, and after he had taken his passage; from the tenor of his conversations with them, which looked rather to his continuance at home than to an absence abroad; and above all from the fact that within twenty-four hours after he had sailed, his confidential clerk, whom he had left in entire charge of his affairs, called a meeting of his creditors.

It may be that this latter fact, as well as the circumstance that his clerks, when interrogated as to his whereabouts, gave false or equivocal answers, or professed ignorance, may not be justly imputable to him. But I can not overlook the fact that the clerks, though afforded the opportunity on this motion, have given no explanation of either of these matters, but leave the inference to be drawn that their behavior was in obedience to

Morgan *v.* Avery.

·his instructions, and in furtherance of his intention to let his failure happen, and the winding up of his affairs occur in his absence.

I repeat that no inference of an intention to defraud his creditors necessarily flows from the facts of the case; nor is it necessary to cast any such imputation in order to sustain the attachment. If finding himself irretrievably involved, so that his failure must soon ' happen, he has desired to be out of the way of his creditors at the time it should happen, though he had left all his property behind him, and though he was aiming to get into other business, by means of which he might ulti-mately retrieve himself, the inference may very properly be drawn that he has departed the state with intent to avoid the service of a summons.

Such, at all events, seems to me to be the highest probability in the case, and I can not, therefore, feel myself warranted in setting aside the attachments as improvidently issued.

The motions must, therefore, be denied. (*a*)

(*a*) This case came up on appeal, at the general term in New-York in February, 1850, before Edmonds, P. J. and Edwards and Mitchell, Justices, and the decision at the special term was affirmed. No opinion was written; but in announcing the decision the presiding justice remarked that all the views expressed in the opinion at the special term were concurred in.