## TIFFANY v. GLOVER.

The return of the officer upon the writ, must constitute the foundation of all subsequent proceedings against the property, under attachment. GREENE, J., *contra.*

The attachment proceeding being in derogation of common law, by virtue of a special statute, summary and extraordinary, the district court is therefore *quo ad hoc* a court of limited jurisdiction. GREENE, J., *contra.*

Where the sheriff did not return in express words that the "property attached was the property of the debtor," but merely returned as follows : "January 2d, 1849, levied the within writ by attaching" the land described, and the report of appraisers ; *held* that the levy was void, and gave no jurisdiction to the court over the property attached ; held, also, that such levy could not be favored by legal intendment, and could be declared void in a collateral proceeding. GREENE, J., *contra.*

A certificate of acknowlegement is good, if not in the language of the statute, provided, the words in the certificate substantially comply with the object and meaning of the statute.

### Appeal from Henry District Court.

*Opinion by* KINNEY, J. Tiffany filed a petition under the code against Glover, claiming the following described tract or parcel of land, to-wit: The south-east quarter of section twenty-nine, in township seventy-one, north of range six west.

The defendant, Glover, answered that he had title in fee simple to the lands mentioned. That on the first day of January, 1849, at Henry county, he had a legal demand against one Winthrop Cheney, who was in possession of said land, and seized in fee of the same, and had all the title in law and equity, free from all legal incumbrance; that he derived his title from one Huldah Cheney, by conveyance, executed on 27th day of June, 1843; that while the title so remained in said Winthrop, defendant sued out a writ of attachment against said Wintrop Cheney, his goods and chattels, lands and tenements, and th ͨ ͭ ͪ ͣ ͢ ͗ ͗

writ was, on the first day of January, 1849, by the sheriff, duly levied upon said land, to satisfy a claim due defendant from said Cheney. That at the March term of the district court following, defendant, on the appearance of said Winthrop, recovered a judgment of three hundred and eighty dollars, while the said writ of attachment was in full force upon said land; that in June, 1850, an execution issued on said judgment, and levied upon said land, which, after having been duly advertised, &c., was on the 15th day of August, 1850, struck off to defendant for three hundred and forty-one dollars, that being the highest and best bid; that a certificate of purchase was executed, and at the expiration of fifteen months, a sheriff's deed was executed to the defendant. Defendant denies any title to the said land in the plaintiff, &c. The cause was submitted to the court upon issue joined between Tiffany and Glover, and, after hearing the evidence, the court decided that the plaintiff had no cause of action.

From the bill of exceptions, taken by Tiffany, it appears that both parties trace their title to Huldah Cheney, who, it is agreed, had a good title, which was duly conveyed to Winthrop Cheney, from whom both claim to have derived title; the plaintiff by virtue of a deed from Winthrop, purporting to have been executed on the first day of July, 1848, and filed for record on the twelfth day of February, 1849; and the defendant, by virtue of an attachment upon the land, judgment against Winthrop, levy and sale of the property in controversy. The proceedings in attachment to final judgment, sale, and sheriff's deed, are all set out at length in the bill of exceptions. From these, it appears that the writ was issued on the first day of January, 1849. Return, as follows: "January 2d, 1849, levied the within writ by attaching the south-east quarter of section twenty-nine, township 71, range six. Report of Appraisers: We, the undersigned, citizens of Henry county, possessing the

qualifications of jurors, having been summoned by W. S. Viney, sheriff of said county, to appraise the following property, levied on by him under and by virtue of said attachment, did, on the second day of January, 1849, after being duly sworn by said sheriff, proceed to appraise the same as set forth, to-wit: the south-east quarter of section twenty-nine, township seventy-one, range six, at five hundred dollars. January 2, 1849." Signed, Thomas Long, Samuel Wood, W. S. Viney, sheriff, H. C.

March term, 1849, parties appeared by their attorneys trial had, verdict for plaintiff for three hundred and eighty dollars, and a general judgment in *personam* entered against Wentworth Cheney. Upon this, a general execution was issued on the 14th day of June, 1850, the land levied upon 18th June, 1850, and August 15th, following, sold to Glover, and time of redemption having expired sheriff's deed made 17th November, 1851. This deed was filed for record 15th day of January, 1852. It is now contended, by the plaintiff, that the proceeding in attachment being in derogation of the common law, and the remedy a violent and extraordinary one, that it should be in strict conformity with the statute to give the court jurisdiction of the property attached, and that as the levy upon the attachment was not according to the requirements of the statute, that the court acquired no jurisdiction over the land by virtue of the attachment levy.

2d. That as the plaintiff's deed was upon record before judgment and seizure upon execution, that his title is paramount to the defendants. These propositions are controverted by the defendant. But if true, it is claimed, that as the plaintiff's deed was defectively acknowledged, there was no legal record of any deed from Cheney to Tiffany, and hence the defendant is an innocent purchaser without notice under a general judgment execution and sale.

The levy is claimed to be defective in this; that it does not appear, by the sheriff's return, that the property

attached was the property of the defendant, nor does it appear that the writ was executed in the presence of two witnesses, as required by statute.

The return of the officer, upon the writ, must constitute the foundation of all subsequent proceedings against the property under the attachment. It is only by the return that the court is advised of the levy, and special judgment and execution can only be awarded upon a sufficient levy, and this must be ascertained by the officer's return. The lien, arising by virtue of the levy, can only attach when the officer strictly complies with the requirements of the statute. The proceeding being in derogation of the common law, and of a violent character, it should affirmatively appear by the officer's return, that the provisions of the statute had been strictly observed, as the jurisdiction of the court over the property depends entirely upon a legal levy. It is by virtue of the levy, authorized by statute, that the court proceeds to render judgment of condemnation against the property. If the levy is defective, the court, acting as a court of limited jurisdiction under a special and stringent statute, has no power to proceed against the land.

In proceedings in attachment, the jurisdiction of the court is obtained by special authority, derived from the legislature, and hence the doctrine of presumption, as applicable to courts in the exercise of common law powers, cannot apply. In attachments, as we have said, it is the *levy* which confers jurisdiction, and if this appear defective it cannot be obviated by legal intendment, or covered by the favor usually extended to courts in the exercise of their ordinary jurisdiction. This first step, necessary to confer power upon the court to charge the land, must be correctly taken, or all subsequent proceedings under the attachment will be *coram non judice* and void.

In support of the correctness of the general propositions here asserted *vide Marshall* v. *Marshall*, 2 G. Greene, 242; *Witkie et al.* v. *Jones*, Morris Iowa R. 97 ; *Martin* v.

*Dryden et al.*, 1 Gil. 212; *Brown* v. *Bodwell*, 4 Scam. 302; *Clark* v. *Harkness*, 1 Scam. 56. In *Bates* v. *Merchant Bank*, 8 Port. 99, it is expressly decided that where summary proceedings are given by statute, everything necessary to give the court jurisdiction must appear of record, and nothing will be taken by intendment. The same doctrine is held in *Hamilton* v. *Burum*, 3 Yerg. 365, where the following similar language is used: "Every fact, necessary to give the court jurisdiction in a summary proceeding, must appear of record to give the judgment validity; if they do not appear the judgment is *coram non judice* and void; *vide Barry* v. *Patterson*, 3 Humph. 313. *Vide* also, a very late case of *Maples* v. *Tunis*, 11 Humph. 108. In this case suit in attachment was instituted before a justice of the peace, land levied upon by virtue of the attachment, judgment on the attachment, execution issued thereon, and levied upon the land. The entire proceeding was then recorded in the circuit court, and an order of sale made; the land sold, and sheriff's deed made to the purchaser. Ejectment is brought to recover possession of the land. Objection is made to the validity of the sheriff's deed, because the affidavit in the attachment was defective in not stating the cause for which the attachment issued. The court say that the affidavit forms a material part of the record, and that they are not precluded by the writ of attachment from taking judicial notice of it. They further say "that the attachment must be strictly construed, being in derogation of common law, and that it is therefore a settled rule, in a series of cases, that any material departure from the requirements of these statutes will vitiate the proceeding, and render it utterly void. In such case the judgment and sale are void, and communicate no title to the purchaser." We only refer to this case *in extenso* to show how very far a highly respectable court, as late as 1850, has gone upon this subject. The proceeding was collateral, and because the affidavit was defective, the

judgment and execution were declared void, and it was decided that the sale communicated no title. It is not necessary, in this case, to adopt the decision to its full extent, but we cite it as corroborative of the general doctrine of the books in attachment cases.

This doctrine then being settled, it cannot be said that the court, in deciding the case between Glover and Cheney, in the attachment, decided in favor of the legality of the levy, and hence that, that is no longer an open question. The court, as we have said, in that proceeding was acting by virtue of a special jurisdiction, and that it rightfully acquired jurisdiction, and properly exercised it, must appear upon the record. We have a right, then, to look through and behind the judgment of that court to the point where its jurisdiction arose, and if we find that the *data* upon which it acted, were not sufficient to confer jurisdiction, all subsequent proceedings are *coram non judice* and void, and may be collaterally attacked whenever attempted to be enforced.

Looking into the proceedings then, in the attachment of *Glover* v. *Cheney* the case is narrowed down to this question: did the sheriff observe the requirements of the statute in making his levy? The sheriff should have returned, that the property attached was attached as the property of the defendant. In no other way could the court legally know the fact, and not until this fact was before the court could the court proceed against the land, as the land of the defendant. If the property of the *defendant* was not attached, there was no lien, there was no levy; and as the fact that it was attached as the property of defendant was essential to constitute a levy, such fact could not be established by extraneous evidence *dehors* the return. There is nothing in the officer's return upon which the court could base an opinion that the writ was levied upon the land of Cheney. The attachment and sheriff's return become muniments of title. The source of title under attachment

Tiffany v. Glover.

can only be ascertained by the return upon the attachment. To this, must the court look in awarding special judgment and execution. If from this it cannot be ascertained whose property is attached, all further proceedings should cease.

The sheriff, under the statute, is only authorized to attach the property of the defendant. It should appear affirmatively, upon his return, that in this particular he observed the statute. In attachment proceedings legal presumptions are not favored, and hence this omission cannot be supplied by intendment.

Again, the statute requires that " the officer to whom the writ of attachment is directed shall by virtue thereof, in presence of two citizens possessing the qualifications of jurors, attach any lands, tenements, &c., of said debtor. " This does not appear to have been done by the sheriff. It constitutes a part of a legal levy and cannot be dispensed with. It is as necessary in order to a proper levy, that the officer should attach the land in the presence of two citizens possessing the requisite qualifications, as that he should act at all in the premises. He had no power to attach the land except in the presence of such citizens, and the attachment is of no effect unless it appears by the return that the officer complied with this provision of the law. True he had the property appraised, but this was also necessary in addition to requirement of §§ 6 vide R. S. p. 78. § 6, 7.

But it is said that Cheney appeared in court, and that this cures defects. We do not understand from the record that he appeared to the attachment; but be this as it may, his appearance could not make that a good levy which was no levy at all, so as to defeat a title conveyed by him which depended for its validity upon the insufficiency of the attachment levy. Cheney could not be permitted to sell land, pocket the money, and then by appearance divest a third person of his rights, and make the same land pay his debts. The court rendered a general judgment against Cheney. But in this case of *Tiffany v. Glover*, it must

z

have decided that the lien upon the land dated from the time the attachment was levied. In this way it has been presented to us and so we understand it. If Tiffany has a deed properly executed and acknowledged, in no other manner could it have been defeated by the court below, as it was filed for record before the judgment against Cheney was obtained.

The objection made to Tiffany's deed is, that it is defectively acknowledged, and that the record of a deed thus acknowledged would not impart notice to a subsequent *bona fide* purchaser without actual notice. The officer states that before him personally appeared the *within* Winthrop Cheney and acknowledged the signing and sealing of the *within* to be his voluntary act and deed for the purposes therein expressed. He also certifies that *said* Winthrop is personally known to him to be the person who signed and sealed the foregoing instrument of writing. It is claimed that the officer should certify that Cheney was personally known to be the person whose name is subscribed to the deed as "party thereto," and we are referred to §§ 10, 11 of R. S., p. 205. The certificate of acknowledgment is not in the precise words of the statute, the object of which is to prevent one individual from personating another. But we think the object and intent of the statute are fully observed by the officer, and the certificate substantially correct. The certificate states that the *within* Winthrop Cheney, &c. This must mean *the* Winthrop Cheney who is described in the deed as "party thereto." It cannot convey any other idea. If the officer had certified that, personally appeared before him Winthrop Cheney, who was known to be the person described in the said deed as grantor, it would only have been explanatory of the word "*within.*" If the certificate had read instead of "within," a person purporting to be the within Winthrop Cheney, then the position taken would be tenable. Understanding the force of the word *within* as used by the

Tiffany *v.* Glover.

officer, the certificate of identity is sufficient. " *Said* Winthrop is personally known to be the person, &c.," that is, *the* Winthrop described in the within deed is personally known to be the person who signed and sealed the said instrument of writing. We cannot but regard the certificate of acknowledgment as substantially correct. We have never held, in giving construction to acknowledgments, that the literal language of the statute should be adopted by the officer, but that it is sufficient if he employs words of the same import and force, as has been done in the case before us. The conclusions which we arrive at in this cause are, first, that the attachment proceeding being in derogation of the common law, by virtue of a special statute summary and extraordinary, that the court was therefore *quo ad hoc* a court of limited jurisdiction. Second, that jurisdiction will not be presumed, but that the facts which gave jurisdiction should appear upon the face of the proceedings. Third, that the attachment proceedings in the case of *Glover* v. *Cheney* may be inquired into collaterally and if it appear from the record that the court did not acquire jurisdiction over the land of Cheney by a proper levy, such levy will be declared void. Fourth, that as the Sheriff did not comply with the requirements of the statute in making his levy, as appears from his return, Glover acquired no lien by virtue thereof upon the land of Cheney, and hence Tiffany's deed being executed and recorded before final judgment must have seniority. Lastly, that the acknowledgment of the deed from Cheney to Tiffany is good in law, and the record of said deed imported notice to Glover who purchased the same land at the Sheriff's sale. The court erred in deciding that Tiffany had no cause of action.

The questions involved in this case being of the utmost importance must be our apology for the time devoted to their consideration in this opinion.

Judgment reversed.

*Dissenting Opinion by* GREENE, J.   It is with self dis-
trust and much reluctance that I dissent from the majority
opinion.   Were the principles involved unimportant, or in
harmony with the decisions of this court, I could more
readily withhold my views.   But to my mind, this decis-
ion, as a precedent for the future, and as affecting an exten-
sive range of rights acquired under judicial action, involves
principles of the utmost importance to our state; and, as I
think, it comes in direct conflict with the precedent rulings
of this court, and is calculated to impair rights judicially
vested, I feel it my duty to take strong ground against the
leading points decided.

In the first place, I cannot agree with the opinion that
the return of the officer constitute the foundation of subse-
quent proceedings under the attachment.   It is not the
returns that constitute a valid attachment of property, and
bring it under the control of the court; it is the act of serv-
ing the writ in presence of two citizens, as required by the
act.   Rev. Stat. 78, § 6.   The next section stipulates that
" the property attached shall be bound from the time of
serving the writ, as aforesaid."   Now, " serving the writ
as aforesaid," is one thing, and *the* thing that binds the
property to the order of the court; " the inventory and
appraisement *of all the property, so by him attached*, is a
second and different thing;" subsequent to all this, and after
the attachment or levy is complete, comes the third and
unimportant duty, of having the appraisement " annexed to
and returned with said writ."   These two sections of the
act direct three distinct duties.   1. The attachment or levy
of property.   2. The inventory and appraisement.   3. The
return of inventory and appraisement with the writ.

The first act is performed by the officer in the presence
of two citizens, having the qualification of jurors; the sec-
ond, by the officer, together with those two citizens under
oath; the third may be performed by the officer himself.
The one act might be perfected to-day; the second next

Tiffany v. Glover.

week, and the third next month, and still all three acts be valid, and the property bound, from the moment the first act was performed. It follows then, that not the return, but the attachment of the property, constituted the authority of the court for subsequent proceedings against the land. I believe it has not, till now, been the doctrine of this or any other court to attach such fundamental importance to an officer's return, especially in a collateral proceeding like the present. In *Doe* v. *Heath*, 7 Blackf. 156, it was held that a purchase at sheriff's sale could not be prejudiced by the imperfect returns of the sheriff, nor even by his making no return at all. *Wheaton* v. *Sexton*, 4 Wheat. 503.

In *Haven* v. *Snow*, 14 Pick. 28, the sheriff, in *fact*, attached property a month sooner than his return stated, and within that month other parties attached the same property, and still the *return* was amended, and the fact that the attachment was made a month before the time stated by the return, became the foundation upon which all the attachment proceedings were regulated. So in *Berry* v. *Griffith*, 2 Har. & Gill. 337, it was held to be the right and duty of a sheriff to correct his returns so as to make them conform to the facts, whatever they may be, and give them legal effect.

In *Reid* v. *Healsey*, 9 Dana, 324, the neglect to make the necessary returns did not vitiate the sale. See also, *Eastman* v. *Eveleth*, 4 Met. 137; *Welder* v. *Holden*, 24 Pick. 8, *Booth* v. *Booth*, 7 Conn. 350; *Mathew* v. *Thompson*, 3 Ham. 272.

This court has repeatedly decided that an omission or irregularity in a sheriff's return cannot invalidate the rights of a *bona fide* purchaser under execution. *Humphrey* v. *Beeson*, 1 G. Greene, 199; *Hopping* v. *Burnam*, 2 ib. 39; *Corriell* v. *Doolittle*, ib. 385; *Patterson* v. *State of Indiana*, ib. 492.

Again, we are informed by the opinion that "the lien, arising by virtue of the levy, can only attach when the officer *strictly* complies with the requirements of the statute,"

But the act itself informs us that "the property attached shall be bound from the time of serving the writ." Rev. Stat. 79, § 7.

It is then stated, as a legal proposition, that "it should affirmatively appear by the officers return that the provisions of the statute had been strictly observed, as the jurisdiction of the court over the property depends entirely upon a legal levy." The only return required by the act is that the inventory and appraisement "shall be annexed to and returned with the writ." How then, can it be assumed that the return mur' how affirmatively that the provisions of the statute had 'n strictly observed? A legal levy, as already shown, is .  o means dependant upon, or the sequence of such a retui

The ground is then taken, that in s ɔh proceedings, the jurisdiction of the court is limited, and "obtained by special authority, derived from the legislature, and hence the doctrine of presumption or legal intendment cannot apply." I consider this proposition and conclusion alike unfounded. It by no means follows that because attachment proceedings are authorised by statute, that therefore the jurisdiction of the district court is limited and special. There is no provision of that law calculated to restrict the general power of the court; on the contrary the law increases the authority of the court, by adding new powers to its general and unlimited common law jurisdiction. Still, that general jurisdiction is to be exercised "in such manner as shall be prescribed by law," Constitution, Code 553, § 4. Now in attachment, as in all other proceedings authorised by law, the jurisdiction of the court is of the same general nature. Although it must conform to the manner prescribed, yet in all particulars not prescribed, its general common law and equity attributes are in full force, and those attributes should be freely exercised, where applicable, either in administering statutory or common law jurisprudence. The jurisdiction of the district court being general, and

Tiffany *v.* Glover.

superior as an original tribunal, it follows that no attribute or power can be taken from it, except by express negative words of a statute or by irresistible implication. *Commonwealth* v. *McCloskey;* 2 Rawl. 369; *Commonwealth* v. *White*, 8 Pick. 453; *Oversure* v. *Smith*, 2 S. & R., 363; *Murfree* v. *Leeper*, 1 Overt. 1; *Burginhofon* v. *Martin*, 3 Yeates, 470.

There is not a word or clause in the attachment law calculated to curtail or limit in any respect the jurisdiction of the court; how then can it be assumed that in administering that law the court becomes *inferior?* Because, it is said, the attachment law is in derogation of common law, and therefore *quo ad hoc*, the court is limited and inferior. This reasoning appears to be conclusive to some minds; but is it sound? Is the proposition true or the conclusion reasonable? What part of the common law is derogated, annulled or revoked by this act? Not a principle of common law is taken away or impaired by it and it never can be in derogation of that law. On the contrary it is a curative, not a disabling act; and so far as the powers of the courts are concerned it takes not one from them; it is entirely cumulative. It gives, but takes nothing away. What reason or foundation then is there for the conclusion, that as to the attachment law the court is to be considered as limited and inferior?

It will be readily conceded by all, that the original writ and proceeding to which the attachment was only an auxiliary, were under the general and superior powers of the court. The statute expressly declares the attachment to be merely auxiliary to the original writ, by which suit was commenced. Rev. Stat. 80, §19. The original writ having been issued in an action of assumpsit, at common law, the writ of attachment, comes in as an auxiliary, helping and aiding the general powers of the court: Clearly, then, this shows no derogation. no restriction. It leaves

the court in the full possession of its power to draw legal presumptions and enforce legal intendments.

I can find no good reason, or authority for rejecting the doctrine of presumption and intendment, in the auxiliary proceeding by attachment.

It is said, the law is violent and stringent, and therefore should be strictly construed, if violent and stringent, it is the province of the legislature and not of the courts to correct the evil. It is the duty of courts to administer the laws agreeable to the objects for which they were enacted. No legitimate intendment should be withheld, nor stringent rule enforced by which the obvious intention of the law would be defeated.

The great object of the attachment law is to protect creditors against fraudulent and dishonest practices too frequently resorted to by debtors. The law furnishes ample safeguards and security to the honest debtor, and simply authorises, as auxiliary to the original suit, an attachment to hold the defendant's property subject to the judgment that might be rendered against him. The law confers greater remedial powers upon the court, to secure justice between litigant parties. It follows, then, that the law should receive such legitimate consideration from the courts as would best secure the objects for which it was enacted.

This doctrine is fully recognized by our own courts in, *Steamboat Kentucky v. Brooks*, 1 G. Greene, 398, under a statute much more innovating upon common law. And in *Britney* v. *Jones*, 1 G. Greene, 266, it was held that " while a court will vigilently protect a debtor against the injury of an attachment illegally prosecuted, the creditor ought to be protected if he *substantially* comply with the requisitions of the law." See, also, *Corriell* v. *Doolittle*, 2 G. Greene, 385; *Roberts* v. *Bourne*, 10 Shep., 165; *Vrazie* v. *Park*, ib. 170; *Coffin* v. *Ray*, 1 Met., 212; *Wilder* v. *Holden*, 24 Peck, 8. If the points deciding those cases

are correct, how can the majority opinion in a collateral proceeding like the present be sustained.

The principles decided by this court in *Wright* v. *Marsh et al.*, 2 G. Greene, 94, directly recognise the general powers of the district courts, under statutory proceedings *in rem*, and distinctly apply the doctrine of presumptions in such cases. In fact these general principles of jurisdiction and presumption have been uniformly recognized in the decisions of this court until the present case arose.

In *Wright* v. *Watkins*, 2 G. Greene, 547, a decree in bankruptcy was pleaded, and although the general bankrupt act is especially in derogation of common law remedies, still it was held, that as the proceeding was had before a court of competent jurisdiction, it could not be collaterally drawn in question; and that nothing should be presumed against the authority or proceedings of the court.

The great case of *Voorhies* v. *U. S. Bank*, 10 Peters 449, is in direct conflict with the decision of the majority. In that case it is considered that the power to issue writs of attachment is an addition to the general powers of a court; that "no objection therefore can be made to their jurisdiction over the case, the cause of action, or the property attached;" and that "there is no principle of law better settled than that every act of a court of competent jurisdiction, shall be presumed to have been rightly done, till the contrary appears; and this rule applies as well to every judgment or decree, rendered in the various stages of these proceedings, from the institution to their completion, as to their adjudication that the plaintiff has a right of action." That case, from the supreme court of the United States, and so directly applicable to the case under consideration in all particulars, comes in direct conflict with the majority opinion; but that circumstance will hardly induce the highest court upon earth to overrule their leading decision on jurisdiction, especially since that decision has been so often confirmed by that court, and by the supreme courts of

26

Tiffany *v.* Glover.

about every state in the Union.   The doctrine is becoming as universal as it is well founded in reason, and in the necessity for stability and uniformity in judicial rights, that whenever a judgment has been given by a court having jurisdiction of the subject matter and the parties, the fact that the court exercised jurisdiction warrants the presumption that all facts, necessary to confer jurisdiction, were proved.   2 Howard, 319; 7 ib. 188.

In this case it must be conceded that the district court had jurisdiction over the subject matter and the parties, that jurisdiction was brought into exercise, and judgment upon it was pronounced, and if there was any question or doubt about the ownership of the property, it must be presumed that the fact was proved as adjudicated.   There was no exceptions taken or objections made at the trial, and no effort to have the judgment reversed, and still, now that the case comes up collaterally, an irregularity is presumed against that solemn adjudication, and against the public record of deeds, and the judgment declared void. That no such case can be thus collaterally impeached, see 2 Peters, 165; 6 ib. 729; 10 ib. 471; 1 Carter Ind. 296, 302.

It may be well, at this point, to enquire, upon what authorities, principle or reason this great change in our system of jurisprudence is justified.   The only decisions of our own court referred to, are, *Wilkie* v. *Jones,* Morris 97; and *Marshall* v. *Marshall,* 2 G. Greene, 242.   As much importance is attached to these cases it may be well to ascertain the analogy they bear to the case at bar.

In *Wilkie* v. *Jones,* two points are decided under the attachment law:   1. The words " *next term* " after publication, are only applicable to a *regular term.*   2. Where there was no personal service, judgment should be *in rem,* and not *in personam.*   These are the only points decided in the case.   True, there is *dictum* in the opinion to the effect that attachment proceedings are violent, and should receive a strict construction; but there is nothing said or

Tiffany *v.* Glover.

intimated against the general jurisdiction of the court, or against the doctrine of intendment.

The case of *Marshall* v. *Marshall*, has no application to the attachment law. It was under the partition act, and the court decided that notice by publication must be made, as required by statute. That is true, but what application has it to this case? Does it show that the writ of attachment was not served and returned as required by statute? It will be readily admitted that the writ should be so served and returned. But in the collateral case at bar, the opinion requires more, much more, in the return than the statute, itself, requires.

The cases referred to in Gilman and Scammon, have as little application as the two cases from our own reports.

*Bates* v. *Merchant's Bank*, 8 Porter, Ala., 99, refers merely to summary proceedings given by statute. So, too, with the case in 3 Yerg., 365. I am not able to understand what application such summary proceeding can have to an auxiliary proceeding to a general action at law. But in the same volume from Alabama, I find the principle decided, that property levied upon, generally will be intended to belong to the defendant in attachment. 8 Porter, 245. This is directly to the point, and is confirmed by *Thornton* v. *Winter*, 9 Ala. 613.

So in *Reders* v. *Wofford*, 4 Smedes and Marsh., 579, where the officer returned a writ of attachment upon land "executed," without stating the manner of its execution, it was presumed to have been regularly executed.

It was held in *Hathaway* v. *Larabee*, 14 Shep., 449, that courts will give effect to a return, made by an officer, upon a writ of attachment, although informally made, when the intention is sufficiently disclosed by the language used.

So far has this general doctrine of presumption been carried, that courts have presumed a levy to have been made, even where there was no return at all. 11 John. 517. The rule is without exception, that where an officer is

required to perform an act, which if omitted, would be neg-
lect of duty, it will be presumed that he has done his duty,
unless the contrary is shown.   19 John., 347; 3 East. 192;
10 ib. 216; 3 Wilson, 362; 2 Black., 852; Butler's N. P.
298; 9 Peters, 134; 12 ib. 437; 3 New Hamp., 310; 10
Smedes and Mar., 452; *Dollarhide* v. *Muscatine Co.*, 1 G.
Greene, 158; *McGuffie* v. *Dervine*, ib. 251; 2 Comstock,
42; 3 Denio, 117; 5 Barber, 611.

Many more corroborative cases might be cited from both
English and American works, but, upon a principle of such
universal application to all officers and courts, both inferior
and superior, it seems unnecessary to multiply authorities,
and still, this principle, appropriate and undeniable as it is,
appears to have been overlooked or disregarded in the opin-
ion under consideration.

It is conceded that the writ was valid and from a
court of competent jurisdiction ; that it was the duty
of the officer, under this writ, to attach the property of
defendant, in Lee county; that the sheriff's return shows
that he "levied the within writ by attaching the" property
in question; that the inventory and appraisement "was
annexed to and returned with the writ," setting forth the
requisite action in reference to " the property levied on by
him, the sheriff, under and by virtue of said attachment;"
and that  the  property  levied  upon,  was  in  fact  the
property of the debtor, at the time; and still, because the
sheriff does not, in express words, say " it was the debtor's
property," the opinion assumes that the officer did not do
his duty; it presumes that he neglected to do what his
authority and oath of office required, and thus presumes
in a collateral proceeding from a court of general jurisdic-
tion.

Ever desirous to concur with the majority of the court,
I have sought thoroughly, but sought in vain, for an
authority, a principle, or reason, to justify the decision
in this case.   The same learned brother who wrote the
opinion before me, prepared an able opinion in *Seely* v.

Tiffany *v.* Glover.

*Reid*, * decided at this term of court with my full concurrence. But surely these two cases are in direct conflict. Both cases refer to the same court, the same officer, and the same nature of statutory, and not common law process. Both cases come collaterally before the court. In one the writ was duly levied and returned; in the other the record distinctly showed that the process was not served and there was no appearance as to one of the defendants, and the court say: " If the record was silent in relation to the service, jurisdiction would be presumed, upon the ground that courts of general jurisdiction, in the exercise of their ordinary powers, are favored with that legal presumption which forbids all inquiry into jurisdiction in a collateral proceeding. But when it appears from the record of such court, that there was no service, that it had no power to render the judgment which it did render, its most solemn acts are mere nullities." Apply that doctrine, so uniformly recognized by this court, to the majority opinion in this case, and how can it be reconciled? It is said that the process of attachment is statutory, and should show strict compliance; but the process provided for chancery is also statutory, Rev. Stat. 107, § 5, 6, 7, 8, and 9, and *pari passu* should show strict compliance. Besides, the return in the present case contains all that is strictly required by the act. It requires no other return, than that the inventory and appraisement "shall be annexed to and returned with said writ." Rev. Stat. 79, § 7. This is the only return required by the law. This, and even more, was returned in this case. How then, under any rule of construction, however strict, can more be required?

Although this was a common law proceeding in assumpsit, aided by the auxiliary process of attachment, before a court of general and ample powers, yet we are told that " the doctrine of presumption, as applicable to courts in the exercise of common law powers, cannot apply." And still, in this very case, the opinion is founded upon a new system

* *Ante* p. 374.

of presumption. 1. The officer is presumed to have violated his duty, although his return shows that he did all that was required by statute, or by the mandate of the writ. 2. The two citizens under oath, are presumed not to have made " a true inventory and appraisement of all the property *so by him attached,*" i. e. attached according to the mandate of the writ. 3. The sheriff and citizens are presumed to have been trespassers, in taking the property of a third party, although the record shows that the title to the property was in the attachment debtor at the date of the levy.

The attachment acts of Ohio and Missouri differ materially from ours, in requiring particular facts to be returned, and hence the cases referred to by counsel from those states, cannot be considered applicable to this. But, even under the decisions from those states, the majority opinion is without foundation or authority. The case in 13 Ohio. 209, is virtually overruled by 15 Ohio, 36, 444. In that case the sheriff's return does not show that the property levied upon belonged to the defendant, and still the proceedings were sustained. See also, 17 Ohio, 431.

In Missouri the return is made part of the record, and more is required than by the Iowa act, and besides the cases referred to in 1 Mo., 239; 2 ib. 15, 308, were up on error, and not collaterally. See 12 Mo., 147.

In 10 Mo. 336, the word "*executed*" was considered sufficient. It was held, "the term executed can mean nothing more or less, than that the officer had complied with the mandate of the writ." 13 Smedes and Mar., 284; 14 ib. 266. Much more clearly does the case at bar show such compliance.

In 20 Vermont 261, property attached is presumed to be in possession of the debtor.

The following authorities are also directly in point; and show that the illegality of service does not involve a question of jurisdiction: 6 Har. and John., 182, 205; 20 Wend.,

Tiffany *v.* Glover.

145; 2 Hill, 518; 7 Barb. 656; 11 ib. 525; 13 ib. 412; 14 Howard 587; 3 Shep. 73

The record, in this case, and the various authorities to which I have referred, and the still greater number which I have examined as applicable to this inquiry, lead me necessarily to the following conclusions.

1. The sheriff's return and the attachment proceedings in this case ,were made and conducted in substantial compliance with the attachment law :

2. In a case — unlike the present—where the attachment is defective or irregular, and where, as in this case, the original proceeding, upon which judgment was rendered, comes within the general jurisdiction of the court, and that jurisdiction appears to have been exercised to final judgment; every matter adjudicated either in the original or auxiliary proceedings, becomes a part of the record, which thenceforth proves itself, will be favored by every legal intendment, and cannot be .collaterally questioned.

3. Where attachment proceedings are exercised, by a court of general powers, and as auxiliary and cumulative to an original proceeding under those general powers—as in this case—that the general jurisdiction is not "therefore *quo ad hoc* limited," but is rather extended, and should be favored by the same general presumption and intendment as if the jurisdiction had not been extended to attachment process.

4. The four conclusions of the majority in relation to this collateral attachment proceeding, are plausible deductions from the principles so ingeniously advanced; still these principles, being in part not applicable, and in part without precedent; the conclusions are without sufficient foundation in law or reason, and cannot be sustained on principle or authority.

5. The judgment should be affirmed.

*Reeves & Miller* and *J. C. Hall*, for appellant.

*D. Rorer* and *LeRoy Palmer*, for appellee.