## SUPREME COURT.

### Bank of Lansingburgh agt. McKie

Can an *attachment*, having been issued upon an affidavit, showing that suffi-
cient grounds exist to warrant it, be vacated, upon a motion founded
upon *new affidavits? Held* not. Why? Because, the allowance of the war-
rant of attachment is clearly within the definition of an *order* contained in
the 400th section of the Code; and if an order, it may be reviewed upon *appeal*
under the *first* subdivision of § 349. (*This agrees with Conklin agt. Dutcher,*
5 *How. Pr. R.* 386; *and is adverse to Morgan agt. Avery,* 7 *Barb.* 656;
see *ante p.* 357).

The fact that the *county judge*, who granted the attachment in this case, was
brother-in-law of the *president* of the plaintiffs' bank, who was con-
sequently a stockholder, *held*, not to be such an affinity as disqualified him
from acting.

A *stockholder* in a bank is not a "*party*" for whose immediate benefit the ac-
tion is prosecuted or defended.

And this point necessarily decides another, that is, that a stockholder may be
a legal *witness* for the bank.

*Albany Special Term, December* 1852. *Motion to vacate
attachment.* On the 25th of September 1852, the plaintiffs made
application to the honorable Charles C. Parmelee, county judge
of Rensselaer, for an attachment against the property of the de-
fendant, on the ground that he had departed from this state,
with intent to defraud his creditors. The application was founded
upon an affidavit of the cashier of the plaintiffs, stating, in sub-
stance that the defendant was indebted to the plaintiffs in the
sum of $15,000, which had become due in August, and for the
collection of which an action had been commenced and process
personally served on the defendant; that when the debt was con-
tracted, the defendant had represented that he was the owner of
certain real estate in the village of Lansingburgh, of the value
$10,000, and that he was worth $25,000, over and above his
debts and liabilities; that the defendant had, on the 17th day of
September, left this state and gone to Cleveland in the state of
Ohio; that before he left, and within two weeks, he had borrowed
from various banks in Troy, and elsewhere, more than $50,000,

Bank of Lansingburgh agt. McKie.

that after reaching Cleveland, he gave out, and pretended that more than $40,000 of his money had been stolen from him; that, besides the plaintiffs' notes, various other notes and acceptances held by other banks and creditors against the defendant had become due and remained unpaid; and that no provision had been made for their payment; that the defendant had within two weeks executed a mortgage upon the property known as Fake's Row, to John S. Fake, to secure $10,000; that since the departure of the defendant, Fake, who had formerly owned the property, had stated publicly that the defendant had within a few days paid to him the purchase money of the property. Upon these facts, and some others stated upon information and belief only, it was alleged that the defendant was insolvent, and had been for the last two months engaged in a deliberate attempt to defraud his creditors, and for this purpose had departed, and still remained absent from the state, and had invented the false and fraudulent statement in respect to the loss of his money.

Upon this affidavit the county judge allowed an attachment, which was issued to the sheriff of Rensselaer, and by virtue of which he seized the property known as *Fake's Row.*

The defendant moved to set aside the attachment upon affidavits. From these affidavits it appears that the president of the plaintiffs' bank, at the time the attachment was issued, was the brother-in-law of the county judge, and was a stockholder in the bank. The defendant also states that he is informed and believes that the county judge is engaged by the plaintiffs in this action as one of their counsel, and has taken quite an active part in advising the plaintiffs about their action, and in prosecuting the same, and in trying to settle it; that he had been employed to go to the county of Washington, where the father of the defendant, who is an endorser upon the notes held by the plaintiffs resides, to see him in relation to the demand, before the attachment was allowed by him.

The defendant states that on the 17th of September he started for Cleveland, on his way to Pittsburgh, where he had made a contract for the purchase of a large quantity of wool—about 250,000 pounds; that he had a large amount of money with him, and, while at Cleveland, he had $48,700 stolen from his room;

that when he left Troy, he expected to be absent *five or six days,* but having lost his money, he was necessarily detained longer in his efforts to recover it, and that he returned to this state on the 27th of September. He states that he had contracted with Fake for the purchase of his property on the 11th of March 1852, for the price of $20,000, which sum he paid to Fake on the 16th of September, in cash, and at the same time received a conveyance; that he at the same time gave Fake a mortgage upon the premises for the sum of $10,000 to secure him for endorsing, and for rents and interest.

It was shown on the part of the plaintiffs, that at the time the defendant left the state, he was indebted to various banks in Troy to the amount of $87,000, and to the plaintiffs in the further sum of $25,000. On the 8th of October, the defendant made an assignment for the benefit of his creditors. The only property contained in his inventory, is " Fake row," a lot of land in Essex county, containing 160 acres and three notes received from Herrington & Warren, upon the sale of his interest in his wool contract, for $15,000.

The other facts in the case, so far as they are material to the ouestions decided, will be found stated in the opinion.

J. H. REYNOLDS, *for Plaintiffs.*

N. HILL JR., *for Defendant.*

HARRIS, Justice.—The facts stated in the affidavit presented to the county judge, upon the application of the plaintiffs, were undoubtedly sufficient to justify him in issuing the attachment. If, as the plaintiffs allege, the story of the defendant's robbery is a fabrication, there can be no doubt that the defendant left the state with intent to defraud his creditors. Assuming the plaintiff's theory, in respect to the alleged loss of the money to be true, it follows, that the defendant went to Cleveland, the more effectually to consummate the fraud he meditated. The circumstances set forth in the affidavit were, to say the least, well calculated to excite suspicion, and were sufficient, I think, to warrant the judge in finding, as a fact, that the defendant had departed from +his state with intent to defraud his creditors. Indeed, it was not denied, upon the argument, that the affidavit, upon which

the attachment was allowed, contained enough, unexplained and uncontradicted, to sustain it.

This being so, a question is presented which, by reason of conflicting decisions, is involved in some difficulty. That question is, whether an attachment having been issued upon an affidavit, showing that sufficient grounds exist to warrant it, a motion may be entertained upon new affidavits to vacate such attachment.

The question first came before the court in Morgan vs. Avery, 7 *Barb.* 656. In that case a motion was made, at a special term, founded upon affidavits, to set aside an attachment, on the ground that it had been improvidently granted. It was held that the motion was properly made—that there was no remedy by appeal from the allowance of the attachment by the judge—that the attachment is process, and, by virtue of its inherent right to control its own process, the court might entertain such a motion. It appears from a note to the report of this case, that, upon appeal to the general term, the decision was affirmed. (See also, St. Arnaut vs. Beixcedon, 3 *Sand. S. C. R.* 703).

Shortly afterwards, the same question came before the court, at a general term, in the sixth district (see Conklin vs. Dutcher, 5 *Howard,* 386). A motion had been made, at a special term, to set aside an attachment; affidavits were produced by the defendant to disprove the facts upon which the attachment had been obtained. The motion having been denied, the defendant appealed to the general term; upon that appeal it was held, that affidavits to controvert the facts upon which the attachment was issued, could not be received. In this decision I am inclined to concur. The argument of Mr. Justice SHANKLAND, in delivering the judgment of the court, seems to me complete and unanswerable. In respect to the order of arrest, and the order of injunction, the legislature has taken care to provide, that the court shall entertain an application to vacate the order upon affidavits, controverting the facts upon which the application was originally founded. The fact that no corresponding provision is made in respect to this other provisional remedy, furnishes strong ground for the inference that it was not intended that such a proceeding should be authorized. The error, into which the

Bank of Lansingburgh agt. McKie.

learned judge, who decided the case of Morgan vs. Avery has fallen, seems to lie in the fact that he has assumed that the allowance of the attachment by the judge can not be regarded as an order made by him, and, of course, that there can be no appeal from his decision, regarding it as an order.    That this is an error, is shown, I think, most conclusively, in Conklin agt. Dutcher. The allowance of the warrant of attachment is clearly within the definition of an order contained in the 400th section of the Code; and, if an order, it may be reviewed upon appeal, under the *first* subdivision of the 349th section.

I agree with Mr. Justice EDMONDS in Morgan agt. Avery, that the court, by virtue of its right to control its own proceedings, may entertain a motion for the purpose of preventing abuse and oppression, under an attachment, as well as any other process or proceeding.    But I am unable to concur with him in the ground upon which this power may be exercised.    It is not because the attachment is *process,* but rather because it is a proceeding in court.    An order of arrest is a " requisition," or " warrant," commanding the sheriff to seize the person of the defendant. An order of injunction is a mandate from the court, or an officer, requiring the party to refrain from certain acts.    An attachment is a requisition upon the sheriff to seize certain property. All are provisional remedies, designed to operate temporarily. Neither is any more the *process* of the court, than either of the others.

If an order, or any other proceeding, be irregular or illegal, a motion may properly be made, at a special term, to set it aside. Thus, in Blake agt. Locy (6 *Howard,* 108), an order had been made by one of the justices of this court, for the examination of an execution debtor.    The judgment had in fact been rendered in a County Court.    Of course, the justice had no authority to make the order.    It was, of itself, a nullity.    A motion was properly entertained to set it aside.    And so any other order made out of court, and without notice to the adverse party, may be vacated or modified on notice, in the manner in which other motions are made.    This practice is authorized by the 324th section of the Code.    But that section is found in the chapter which relates to appeals.    It is evident from its connection that the

Bank of Lansingburgh agt. McKie.

provision relates to the review of the order, and not a rehearing of the application upon new papers.

This, then, I understand to be the practice as prescribed by the Code in cases like that under consideration. The order having been made out of court, and without notice, the adverse party is at liberty to apply to the judge who made the order to vacate or modify it. This application may be founded upon the papers upon which the judge acted when he made the order, or upon new papers. The decision upon this application is final, except in such cases as are within the provisions of the 349th section. In those cases, of course, a review may be had by an appeal to the general term. Or, instead of applying to the judge who made the order, the party affected by it may move at a special term to vacate or modify it. Such motion, being but a review of the decision of one judge by another single judge, can not involve a rehearing of the original application upon new proof. It is limited to the question whether, upon the facts before the judge, he was authorized to make the order. A review upon the merits, can only be had upon appeal, under the 349th section. If the order be not appealable, it is final, unless it can be set aside for irregularity, or for want of jurisdiction in the officer to make it (see Lindsay vs. Sherman, 1 *Code R. n. s.* 25). In that case, the assignee of a judgment creditor had made an affidavit and procured an order for the examination of his debtor. The affidavit omitted to state upon what authority the application was made. As the case stood before the judge who made the order, the application was made by a mere volunteer. A motion was made, at a special term, to set aside the order. Although it was shown, upon that motion, that the party who made the affidavit was, in fact, the assignee of the judgment, the order was set aside. It was improperly granted. The judge had not the necessary facts before him to authorize him to make the order, and upon the motion to vacate, it was too late to supply these facts.

I am of opnion, therefore, that upon this motion, the question is not, whether upon the facts as they now appear, the plaintiffs are entitled to an attachment, but it is whether the judge who allowed the attachment was authorized, upon the facts before

him, to make the order. If it had been the intention of the legislature that after an attachment had been issued, the question whether or not it should continue, might be tried upon a new state of facts, it is to be presumed that such intention would have been declared, as it has been in the case of an order of arrest and an order of injunction (see *Code*, § 204, 205, 225, 226). These provisions were quite unnecessary, if, without any such express authority, the right of a party to an attachment can, after it has been allowed by one judge, be retried before another judge, upon a new state of facts. The question now to be decided is therefore, whether, upon the case made upon the application for the attachment, it was properly issued. The rule which is to govern in the decision of this question, is whether the facts and circumstances stated in the affidavit upon which the application was founded, were sufficient to call upon the judge to exercise his judgment upon the sufficiency of the evidence. If so, his decision, at least upon this motion, is conclusive (see Conklin agt. Dutcher, above cited).

But, whether this motion is to be determined by the case made before the judge, or upon the facts as they now appear, I am not prepared to say that the judge erred in his conclusion that the defendant had left the state with intent to defraud his creditors, or that the attachment now should be set aside. Before the judge, it appeared that after the plaintiffs' debt had become due, and a suit had been brought against him, and when other debts were about maturing, the defendant had borrowed more than $50,000, and had mortgaged his property for nearly or quite its full value, and then left the state, taking with him this large amount of money, and, after reaching Cleveland, pretended that he had there been robbed. Here was certainly evidence enough to call for the decision of the judge upon the question, whether or not the defendant had departed from the state with an intent to defraud his creditors. Nor do I think the voluminous affidavits which have been read upon this motion, have essentially changed the leading features of the case. It still appears that when he left, the defendant was indebted to the banks in Troy and Lansingburh for loans to the amount of $112,000; that only the day before he left, he paid to Mr. Fake $20,000 for the pro-

Bank of Lansingburgh agt. McKie.

perty called Fake's Row, and received a deed therefor, and at the same time executed to Fake a mortgage for $10,000, which, upon its face, purports to have been made to secure a part of the purchase money of the premises, and which, since his return, he has sometimes stated was in fact executed for that purpose, alleging that the purchase money was $30,000, although in his affidavit, produced upon this motion, he states that the mortgage was, in fact, given to secure the mortgagee for future endorsements, and for rent and interest. According to the opinion of three assessors of Lansingburgh, the whole value of the property does not exceed the sum of $12,000. It does not appear that when the defendant left the state he had any other tangible property, except a lot of 160 acres in Essex county, the value of which, though not stated, was probably quite inconsiderable. It is true, the defendant himself swears that when at Cleveland, the sum of $48,700 was stolen from his room. Assuming this to be so, it is quite evident from his own account of his affairs, that he was, before this loss, hopelessly insolvent. It is also true, that the defendant shows a sufficient reason for his leaving the state, at the time he did. He had a contract for the purchase of a large quantity of wool, and he alleges that he took the money with him for the purpose of paying for the wool. How much money was required for that purpose, neither the defendant nor Mr. Herrington, to whom he transferred his interest in the contract, has stated. It seems that payments had previously been made on account of the wool to a large amount; for, when the contract was transferred, the defendant received from Herrington the notes of his firm for more than $33,000. But, conceding that the large amount of money which the defendant took with him was necessary for the fulfillment of his wool contract, it is certainly strange, so strange as to be almost incredible, that a man of experience, and accustomed, as the defendant seems to have been, to the transaction of such business, should have thought it worth while to carry with him so large an amount of money, while other modes of transmitting funds were at his command in every respect more convenient, and entirely safe. These are circumstances which, whatever the truth may have been, are calculated to excite the suspicion

that the conduct of the defendant was governed by some other motive than that of performing his contract for the purchase of wool.

The defendant states that he left Troy for the purpose of going to Pittsburg to fulfill his wool contract, and that when he left he did not expect to be absent more than *five or six days*, and yet, it appears that he only arrived at Cleveland on the evening of the *fifth* day after he left Troy. Called upon, as I think he was, by the peculiar circumstances in which he found himself placed, for a full explanation, it would have been more satisfactory if he had stated where he had been, or how he had been detained during those *five days*. I think, too, the defendant should have felt himself called upon to detail more particularly the circumstances under which a theft so unusual was effected. It would have been better if he had stated how much money he had with him, how much he left in his room, and how it was secured; how the thief effected his entrance and how it happened, that at a public house and at such an hour, his room could have been forcibly entered without the detection of the thief. It is not easy to give credit to the defendant's account of his loss, without more explicit and detailed information in respect to the circumstances.

There is also some intrinsic evidence in the case, which, though of itself scarcely deserving notice, yet taken in connection with the circumstances of suspicion with which the transaction seems to be encompassed, has, I admit, had some influence upon my own mind. In the affidavit of the plaintiffs' cashier, read in opposition to this motion, three letters written by the defendant to him, in the latter part of August, are set forth. It appears from these letters that it is the defendant's practice in writing letters to conclude with the words, " yours truly," before subscribing his name. These words appear in two of the letters set forth. In the other he concludes with the words " yours respectfully." It also appears from the defendant's affidavit that about the time he left Cleveland, Mr. McKinstry, the chief of police of that city, received, through the post office, a letter which had been dropped in the office, purporting to have been written by the person who had obtained the money, and

proposing, in substance, to compromise the matter by restoring half the amount. This letter, like two of those written by the defendant to the cashier, is subscribed "yours truly," and signed "48,900." I do not say that this circumstance furnishes very strong evidence against the defendant. It does not; for others use the same mode of address in concluding a letter. And yet it is a little unfortunate for the defendant that such coincidences appear.

Whether, therefore, the question is to be determined upon the facts presented to the county judge, or upon the additional facts which now appear, I am not prepared to say that the attachment ought not to have been issued.

It only remains to consider the question whether the county judge was incompetent to act in the case. If he was, the attachment was illegally issued, and should be set aside. The objection to his competency rests upon two grounds; first, that he was the brother-in-law of the president of the plaintiffs' bank, who was, of course, a stockholder; and, then, that he was, in fact, in the plaintiffs' employ as counsel, and thus disqualified from acting officially.

The statute disqualifies a judge from acting in any case "in which he would be excluded from being a juror by reason of consanguinity or affinity to either of the *parties*" (2 *R. S.* 275, §2). I have no doubt that the term "parties," as here used, should be construed to embrace all persons for whose immediate benefit the action is prosecuted or defended. It is enough to disqualify the judge, if he be related to a party *beneficially* interested (Foot vs. Morgan, 1 *Hill*, 654). But I do not understand that a stockholder in a bank is such a party. He has no certain or immediate interest in the event of the suit. Like the residuary legatee in Weston agt. Hatch (6 *Howard*, 443), he has "a resulting or collateral interest in the event, but he can not take the fruits of the action, or be made responsible in case of defeat. His interest is such as would have disqualified him as a witness under the former practice, but it can not be said that the suit is prosecuted for his immediate benefit (Davies vs. Cram, 4 *Sand. S. C. R.* 355; Washington Bank vs. Palmer, 2 *id.* 686). I understand, too, that the principle of these decisions has recently

been affirmed in the Court of Appeals (*a*). The fact, therefore, that the county judge was a relative of a stockholder in the plaintiff's bank, did not render him incompetent to allow the attachment.

In respect to the other objection that the county judge had acted as counsel for the plaintiffs, I think is fully met by the affidavit of Judge Parmelee himself. He swears that he has never acted as attorney or counsel for the plaintiffs in this suit or any other suit or proceeding between the parties; that though he did, as the friend, and at the request of some of the parties interested, apply to George McKie to confess a judgment; and had endeavored to effect a settlement between the parties, he had not been employed to do so as attorney or counsel, or in any other capacity.

I am of opinion that the county judge had legal authority to entertain the application for an attachment, and that there was no error in its allowance. The motion must, therefore, be denied with costs.

(*a*) The case of the President, &c. of the Montgomery County Bank, agt. Marsh and others, decided by the Court of Appeals at the last December term (1852), is to this identical point. The reporter's note in that case runs as follows: " A stockholder of a bank is a competent witness for the bank, notwithstanding his interest. He is not a *party* to the action, nor a person for whose *immediate* benefit it is prosecuted; within the meaning of section 399 of the Code of Procedure.